UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA                                    Docket No. 23-CR-316 (NRM)


           -- against –


LU JIANWANG (卢建旺),  also known as
HARRY LU,
                                   Defendant.

------------------------------------------------------------------X


**MEMORANDUM IN SUPPORT OF THE DEFENDANT'S
MOTIONS IN LIMINE**


JOHN F. CARMAN, ESQ.
666 Old Country Road
Garden City, NY 11530
(516) 683-3600
john@johncarmanlaw.com

*Attorney for Defendant*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Preliminary Statement ...................................................................................................1

Overview of the Case.....................................................................................................1

Argument…… ...............................................................................................................2

      I.      Evidence Concerning the 2015 Counter-Protest.......................................................2

      II.     Evidence Concerning Alleged Bad Acts of Third Parties ......................................5

      III.    Overseas Travel Unrelated to the Charges..............................................................8

      IV.    Expert Testimony Beyond the Bounds of Rule 702 ................................................9

      V.     Reference to "Victims"..........................................................................................11

      VI.    Reference to Espionage, National Security, or Similar Terms ..............................12

Conclusion……….. .....................................................................................................12

i

## TABLE OF AUTHORITIES

**Cases:**

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)........................................................................3

*Connick v. Myers*, 461 U.S. 138 (1983).............................................................................3

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).....................................9

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ...........................................................3

*Guerrero v. Loiacono*, 769 F. Supp. 3d 158 (E.D.N.Y. 2024) .........................................9

*Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316 (E.D.N.Y. 2013)...................................10

*Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007) .....................................................8

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).........................................3

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005).................................................9

*Old Chief v. United States*, 519 U.S. 172 (1997)..............................................................6

*Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015)...................................................3

*RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325 (2016)..............................................................8

*Salinas v. United States*, 522 U.S. 52 (1997)....................................................................5

*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) .............................................10

*United States v. Alvarez*, 132 S. Ct. 2537 (2012) .............................................................3

*United States v. Craig*, 401 F. Supp. 3d 49 (D.D.C. 2019) ............................................12

*United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003) ..................................................9

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011)...................................................3

*United States v. Nachamie*, 101 F.Supp.2d 134 (S.D.N.Y. 2000) ...................................6

*United States v. Pinson*, 860 F.3d 152 (4th Cir. 2017) .....................................................5

*United States v. Ray*, 2022 WL 558146 (S.D.N.Y. 2022) ...............................................11

*United States v. Tao*, 2022 WL 252019 (D. Kan. 2022)..................................................12

*United States v. Wagner*, 2022 WL 19179 (S.D.N.Y. 2022)..........................................11

*United States v. Zemlyansky*, 908 F.3d 1 (2d Cir. 2018) ...............................................5

**Statutes and Rules:**

U.S. Const. Amend. 1 ....................................................................................................3,4

18 U.S.C. § 2  .................................................................................................................1

18 U.S.C. § 371...............................................................................................................1

18 U.S.C. § 951...............................................................................................................1

18 U.S.C. § 1512.............................................................................................................1

18 U.S.C. § 3551.............................................................................................................1

22 U.S.C. § 611............................................................................................................3,4,8

22 U.S.C. § 619...............................................................................................................8

Fed. R. Evid. 401 ...........................................................................................................8

Fed. R. Evid. 403 ........................................................................................................6,8

Fed. R. Evid. 702 ...........................................................................................................9

## PRELIMINARY STATEMENT

Defendant LU JIANWANG a/k/a HARRY LU, by and through the undersigned counsel, respectfully submits this memorandum in support of his motion *in limine* to preclude certain evidence and/or argument at the time of trial.

## OVERVIEW OF THE CASE

By indictment lodged August 2, 2023, defendant Lu was charged with conspiracy to act as an agent of a foreign government (18 U.S.C. §§ 371 and 3551 *et. seq.*) and obstruction of justice (18 U.S.C. §§ 1512(c)(1), 2, and 3551 *et. seq.*) (ECF Doc. 24). By superseding indictment lodged March 25, 2026, Lu was additionally charged with one count of acting as an agent of a foreign government without registering with the Attorney General (18 U.S.C. §§ 951(a), 2, and 3551 *et. seq.*) (ECF Doc. 86).

The gravamen of the charges, as detailed in the original complaint (ECF Doc. 4), is that Lu, along with co-defendant Chen Jinping,[1] established a nonprofit organization in lower Manhattan in 2013 designed as a social gathering place for Fujianese people in New York City. (ECF Doc. 4, ¶ 3). Allegedly, Lu "has had a longstanding relationship of trust with the [People's Republic of China] government" going back to at least 2015, when he and other leaders of Chinese-American associations "each sent 15 members to participate in counterprotests in Washington, D.C., against public demonstrations against President Xi [Jinping] by members of the Falun Gong religion." (Id., ¶ 14). Subsequently, since in or about 2018, Lu is alleged to have assisted the Chinese Ministry of Public Security ("MPS") in "identify[ing] the locations of Chinese persons of interest in the United States" including individuals identified as Victims 1 and 2 (id., ¶¶ 18-20)

---

[1] Defendant Jinping pled guilty before Your Honor on December 18, 2024, and has not yet been sentenced.

1

and, since 2022, he is alleged to have participated in, and lent the association's premises to, the MPS's efforts to establish an "overseas police station" (id., ¶¶ 21-29). These allegations form the basis of the conspiracy and FARA charges.

In addition, in or about October 2022, Lu is alleged to have deleted messages from his cell phone reflecting communications between Lu and/or Chen and representatives of MPS with the intent to render them unavailable for a federal grand jury investigation (id., ¶ 43), which forms the basis of the charge of obstruction of justice.

In light of the nature of the charges and of representations made by the government at various points in the proceedings, defendant believes that the government will offer evidence and/or argument in one or more of the following categories: (1) evidence concerning Lu's alleged role in the 2015 counterprotest; (2) alleged bad acts committed by third parties in the absence of proof that they were acting at the behest of, and/or in coordination with, Lu; (3) evidence of overseas travel not connected to the charges; (4) expert testimony going beyond the permissible role of experts under Fed. R. Evid. 702 *et. seq.*; (5) use of the word "victim" during examination of witnesses and/or elicitation of the term "victim" from such witnesses; and/or (6) use of terms such as espionage, national security, or words of similar import. For the reasons set forth below, such evidence and/or argument should be precluded.

## ARGUMENT

### I. EVIDENCE CONCERNING THE 2015 COUNTER-PROTEST

Defendant first submits that this Court should preclude any evidence of, or reference to, his alleged role in organizing and/or contributing to a 2015 counter-protest against Falun Gong, either as background or as conduct intrinsic to the charged offenses. Defendant recognizes, as he must, that acts undertaken in violation of FARA and/or in furtherance of a FARA conspiracy need

not be independently illegal, and that lawful acts may make out these charges if undertaken at the direction and/or control of a foreign government. But defendant submits that this principle has a limit where the lawful act at issue consists of constitutionally protected speech, particularly where it at minimum stretches the boundaries of "political activities" as defined in 22 U.S.C. § 611(o).

Accepting the government's expansion of FARA would render it significantly overbroad. "A law is overbroad if it 'punishes a substantial amount of protected free speech, judged in relation to [its] plainly legitimate sweep,'" *United States v. Farhane*, 634 F.3d 127, 136 (2d Cir. 2011), and even "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). Courts closely scrutinize such laws. *See, e.g., Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163–64 (2015) (explaining that strict scrutiny applies where laws "defin[e] regulated speech by particular subject matter" or "by its function or purpose" because "[b]oth are distinctions drawn based on the message a speaker conveys"); *Connick v. Myers*, 461 U.S. 138, 145 (1983) (*quoting N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982)) ("[T]he Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection.").

Indeed, conduct composed entirely of speech cannot be criminalized unless it amounts to a true threat or imminent danger of breach of the peace, *see Brandenburg v. Ohio*, 395 U.S. 444, 452-53 (1969), even if false, misleading, or inflammatory, *see United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012).

In this case, Lu's alleged role in the 2015 protest consisted of organizing members of the association of which he was an officer to travel to Washington, D.C. and engage in expressive speech. According to the government's complaint, he was not the only officer of a Chinese-

3

American association who did so; instead, numerous clubs and organizations, led by people who have never been charged with being Chinese agents, participated in the counter-protest. The government has not alleged that any breach of the peace occurred or was imminent, or that any threats were made, much less that any of these things were done by Lu or at Lu's direction.

Defendant submits that offering evidence of this protest either as intrinsic to a crime or as background to crime would chill protected speech, particularly since it at minimum pushes the envelope of what "political activities" require FARA registration.  Political activities are defined in 22 U.S.C. § 611(o) as "any activity that the person engaging in believes will, or that the person intends to, *in any way influence any agency or official of the Government of the United States or any section of the public within the United States* with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party" (emphasis added).  In this case, the government alleges that the purpose of the 2015 counter-protest was *not* to influence either the American government or the American public, but instead to "ensur[e] that members of the Falun Gong religion did not disturb President Xi's visit" to the United States. (ECF Doc. 4, ¶ 14). The alleged object of the counterprotest was, in other words, to provide moral support for President Xi rather than to affect any domestic or foreign policy debate. This was not an act of lobbying, public-facing propaganda, or any of the similar acts that classically define the role of a foreign agent, and evidence of it would also prejudice defendant by suggesting to the jury that mere pro-PRC sympathies and/or participation in pro-PRC political expression implies guilt. Therefore, this Court should find that admitting evidence concerning the protest would violate First Amendment principles.

## II.     EVIDENCE CONCERNING ALLEGED BAD ACTS OF THIRD PARTIES

Second, based on discovery production and communications from the government, it is anticipated that the government will offer evidence of bad acts by persons other than Lu. Specifically, defendant anticipates that the government will seek to adduce evidence (1) that alleged Victim 1 was "harassed by the [Fujianese] association" and received purported threats to him and his family members from "purported members of the association" (see ECF Doc. 4, ¶¶ 18-19); (2) that members of alleged Victim 1's family in China were harassed by officials of the Chinese Ministry of Public Security ("MPS") after Victim 1 arrived in the United States (id., ¶ 19); (3) that in 2020, "another member of the association," identified as CC-1, contacted Lu to help locate alleged Victim 2 in California, claiming that they were seeking such information relating to a lawsuit (id., ¶ 20); and (4) that CC-1 also allegedly asked Lu if there was any way to deport Victim-1 back to China (id., ¶ 18).

As to the first two of these allegations, defendant certainly recognizes that the government can adduce evidence concerning the acts of co-conspirators – but membership in an association or government bureau is not the same as membership in a conspiracy.  "[A] conspiracy consists of partners in a criminal plan who agree to pursue the same criminal objective." *United States v. Pinson*, 860 F.3d 152, 161-62 (4th Cir. 2017), *quoting Salinas v. United States*, 522 U.S. 52, 63-64 (1997). The fact that a defendant and another person have a business or organizational relationship does not by itself make them co-conspirators. *See id.* at 162. Conspiracy instead requires "proof of: (1) an agreement between at least two people to commit an unlawful act, and (2) the defendant's knowing engagement in the conspiracy with the specific intent that the object of the conspiracy be committed." *United States v. Zemlyansky*, 908 F.3d 1, 10 (2d Cir. 2018).

The government is thus not entitled to assume that Lu is a co-conspirator with every

5

member of the association at issue and/or every employee or agent of MPS. Instead, it must be proven that an agreement existed between Lu and (i) the "purported members of the association" who harassed Victim 1 and/or (ii) the particular MPS members who harassed Victim 1's relatives. Indeed, given that Victim 1 is alleged to have been a political dissident, agents of MPS could well have motives to threaten him and/or his family members that are entirely independent of Lu, and the fact that the threats by MPS allegedly occurred in China makes it even less likely that Lu – who is accused of acting as an unregistered agent *in New York* – had anything to do with or even knew of such threats. Accordingly, unless the government can show that it will be able to prove up a conspiratorial agreement between Lu and the unnamed persons who committed the alleged acts of harassment, defendant submits that evidence of such acts lacks relevance and should not be admitted.

Alternatively, even if this Court were to determine that evidence of third-party harassment of Victim 1 and/or his family members bears some relevance to the issues before the jury, such evidence should be precluded under Rule 403. It is well settled that Rule 403 precludes admission of evidence whose probative value is significantly outweighed by the potential for unfair prejudice even if that evidence is otherwise admissible. *See Old Chief v. United States*, 519 U.S. 172, 180-83 (1997). Even if evidence is "of *some* probative value in explaining the background of [an offense]," it should not be admitted where the prosecution can use "other, less prejudicial evidence that makes the same points." *United States v. Nachamie*, 101 F.Supp.2d 134, 142 (S.D.N.Y. 2000) (emphasis added), *citing Old Chief, supra*. "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Old Chief*, 519 U.S. at 182-83.

In this case, defendant Lu is accused of failing to register as an agent of the government of the People's Republic of China – essentially a paperwork offense. The alleged acts of unnamed third parties, in contrast, include harassment and threats of violence, and as such are more inflammatory than the offense on trial. Moreover, based on its production thus far, the government has ample other evidence (although, of course, disputed by Lu) from which it can seek to prove that Lu acted at the direction and control of Chinese officials. This Court should thus find that any marginal probative value of the first two alleged bad acts would be substantially outweighed by the likelihood of unfair prejudice to Lu.

Finally, the third and fourth allegations – that Lu was asked for information concerning Victim 2 by "another member of the association," namely CC-1, and that he was also asked by CC-1 if there was any way to deport Victim 1 – bear even less connection to the issues on trial. Lu is accused in the indictment of acting at the direction *of the government of the People's Republic of China*, not at the behest of other members of the Chinese-American community. There is nothing illegal about passing on information that a fellow member of the Chinese community in the United States says he needs for a private lawsuit, or indeed, giving advice to a fellow member of the Chinese community regarding a third party's immigration status, even if doing so in service of a private grudge might be unethical. Unless the government can prove that CC-1 was also acting at the direction of Chinese officials and that Lu entered into an agreement with him to obtain that information and/or to help secure Victim-1's deportation on behalf of the government of China, it is irrelevant to the issues at hand and would only serve to prejudice Lu by painting him as a snooper and a stalker. And this is particularly true given that neither the complaint nor the indictment alleges that Lu actually provided the information requested of him or that he actually did anything to get Victim-1 deported. This evidence should thus be precluded under Rules 401 and 403.

7

### III.    OVERSEAS TRAVEL UNRELATED TO THE CHARGES

Third, this Court should preclude evidence or argument relating to Lu's alleged international travel and/or acts outside the United States. FARA applies only to activities conducted within the United States. See 22 U.S.C. §§ 611(c)(1)(i)–(iv) (applying solely to conduct occurring "within the United States"); 619 (restricting application of FARA to "the several States, the District of Columbia, the Territories, the Canal Zone, the insular possessions, and all other places now or hereafter subject to the civil or military jurisdiction of the United States"); *see also RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016) (*quoting Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007)) ("United States law governs domestically but does not rule the world"). FARA's purposes further confirm what its language provides; as relevant here, the statute is aimed at ensuring disclosures regarding domestic efforts to influence federal policymakers or the public. *See id.* § 611(o) (defining "political activities"); *see* Point I above.

Despite FARA's domestic focus, the complaint, indictment, and superseding indictment make repeated reference to travel abroad by Lu and to alleged meetings with Chinese officials in China. This Court should preclude any evidence or argument regarding such activities. There is no allegation, nor could there be, that anything occurring during those international trips violated FARA, which has no applicability outside the United States. Nor would such evidence make any material fact "more or less probable," *see* Fed. R. Evid. 401, as Lu's role as a prominent member of the Chinese-American community and an officer of a Fujianese diaspora organization provides ample legitimate reason for him to maintain friendly relations with Chinese officials who the members of his association might encounter on their visits home. Moreover, evidence of such travel would create a substantial risk of unfair prejudice, *see* Fed. R. Evid. 403, in that the jury might be misled into believing that international travel and/or attendance at high-profile events in

8

the PRC is *ipso facto* unlawful conduct under FARA, or that the jury might be swayed to infer guilt based on Lu's mere attendance at foreign events and association with officials of the Chinese government.  Evidence or argument regarding such matters should therefore be precluded.

## IV.    EXPERT TESTIMONY BEYOND THE BOUNDS OF RULE 702

Fourth, this Court should preclude certain portions of the proposed expert testimony that the government has noticed regarding the structure of the Chinese government, the activities of MPS in particular, and its relationship to certain allegations in this case. While defendant does not dispute the credentials of the government's expert, parts of his proposed opinion consist of unjustified inferential leaps about connections between Chinese political institutions and foreign influence campaigns as they supposedly relate to this case. Moreover, allowing the jury to hear inflammatory testimony about other foreign interference by the PRC and espionage, which is not relevant to this case, would improperly shift the focus of the trial from the offenses charged to generalized concerns about China and foreign influence; that is unfairly prejudicial, especially in today's climate of heightened anti-China fears and rhetoric.

The Second Circuit has emphasized that expert opinion should not be admitted if it invites the jury to render a verdict on an improper basis. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *see also United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003).  Moreover, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see Guerrero v. Loiacono*, 769 F. Supp. 3d 158, 168 (E.D.N.Y. 2024). Even when a witness is qualified to provide expert testimony, the Court still acts as a gatekeeper to ensure that testimony fits the facts at issue and actually assists the jury in determining a disputed material fact. *See generally Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).

Portions of the government's proposed expert testimony do not meet this standard. To

9

begin with, much of the proposed testimony consists of a primer on the internal workings of the CCP, including detailed descriptions of the Chinese constitution, the hierarchy of the Politburo, and the function of various ministries. These do not relate to any elements of the charged offenses, nor does the proposed academic discussion of these matters make any fact of consequence in determining this action more or less probable. Also problematic are speculative and generalized opinions regarding the CCP and Chinese government's relationship to overseas Chinese associations, which render suspect every member of the Chinese diaspora who is an officer in, or even a member of, a local social and/or fraternal club.  Likewise, testimony about how the CCP allegedly recruits spies or conducts global intelligence operations, and/or about the actions of the MPS or United Front worldwide, is far afield from the facts of this case, highly inflammatory, and does not bear on any of the charged offenses.  And courts routinely exclude expert testimony that concerns unrelated bad acts of others and risks confusing the jury about a defendant's own conduct. *See, e.g., Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 324 (E.D.N.Y. 2013) (granting, in part, a motion to exclude expert testimony as inadmissible opinions as to the state of mind of charitable organization that had a relationship with Hamas); *see also United States v. Al-Moayad*, 545 F.3d 139, 160–61 (2d Cir. 2008) (explaining "the highly charged and emotional nature of [] testimony and its minimal evidentiary value" invited the jury to convict on an improper basis).

At minimum, this testimony should be excluded under Rule 403 because its inflammatory content would mislead the jury and unfairly prejudice the defense. Courts have repeatedly recognized the extraordinary prejudice of evidence invoking controversial topics, such as espionage, hostile foreign governments, or terrorism. *See Al-Moayad*, 545 F.3d at 160. Those concerns are already significant here, where it is alleged that the PRC police made use of Lu to extend their reach into the United States and intimidate dissidents in the diaspora. And they would

10

be exacerbated by unnuanced, generalized and broad-based treatment of these issues intertwined with essential elements of the charged offenses.  These portions of the proposed expert testimony are simply a disguised vehicle for the government to present broad narratives about CCP espionage and global influence operations as well as generalizations about how members of the Chinese diaspora interacting with PRC government or party officials are likely to act. Defendant thus submits that this unhelpful and prejudicial material should be excluded.

## V.    REFERENCE TO "VICTIMS"

Sixth, defendant anticipates that the government will refer to certain individuals as they are referred to in the complaint and indictment, namely "Victim 1," "Victim 2," etc. Defendant does not seek to preclude the government from arguing to the jury in opening or summation that these individuals are victims. However, this Court should preclude the government from (1) using the term "victim" when questioning witnesses, and (2) eliciting testimony in which such witnesses refer to "victims."

Courts have found that during trial, where a defendant is still cloaked with the presumption of innocence, the probative value of using the term "victim" is outweighed by the risk of unfair prejudice, especially where, as here, the defendant denies that any crime occurred at all. *See, e.g., United States v. Ray*, 2022 WL 558146, at *26 (S.D.N.Y. 2022) (precluding use of the term "victim" where the defendant's defense was that no crime occurred); *see also United States v. Wagner*, 2022 WL 19179, at *6 (S.D.N.Y. 2022) (precluding use of term "victim" where defendant was not charged with a crime against the person). While the government is free to argue to the jury that Lu is guilty of a crime and that certain individuals are his victims, *see Ray, supra*, it should thus not be permitted to use or elicit that term or terms of similar meaning during presentation of evidence, *see id.*, and should instead be directed to use the individuals' names or refer to them by

11

a neutral term.

## VI.      REFERENCE TO ESPIONAGE, NATIONAL SECURITY, OR SIMILAR TERMS

Finally, this Court should preclude the government from referring to Lu's alleged activities – whether in argument to the jury or in questioning of witnesses – in terms of espionage, national security, or terms of similar import.  It is beyond dispute that FARA is not coextensive with espionage, that damage or intended damage to national security is not an element of the offense, and that the acts that may give rise to an obligation to register under FARA include conduct that is lawful and innocuous. *See United States v. Craig*, 401 F. Supp. 3d 49, 52 (D.D.C. 2019). It is also undisputed that the acts Lu is alleged to have committed were directed at members of the Chinese diaspora rather than the national security of the United States and that the government does not claim that he was acting as a spy. Such terms therefore have no place at trial and should be precluded. *See United States v. Tao*, 2022 WL 252019, at *6 (D. Kan. 2022) ((granting motion in limine where defendant allegedly concealed his employment as a professor in the PRC because the case "[wa]s not an espionage prosecution, and the Government may not color the trial with national security overtones").

## <u>CONCLUSION</u>

**WHEREFORE**, in light of the foregoing, this Court should issue an Order granting this motion in its entirety and granting such other and further relief to defendant Lu as it may deem just and proper.

Dated: Garden City, NY
        April 1, 2026

/s/ John F. Carman
JOHN F. CARMAN

12